## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON PARKER, | : | 1:15-CV-01784 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| SERGEANT BORING, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.  Introduction.

Plaintiff Jason Parker ("Parker"), a former state prisoner proceeding *pro se*, has filed an amended complaint raising claims that stem primarily from the confiscation of his prescription eyeglasses while he was incarcerated at SCI-Camp Hill.  After screening the amended complaint, we conclude that Parker's amended complaint fails to state a claim upon which relief may be granted and that granting Parker further leave to amend would be futile.  Therefore, we recommend that the amended complaint be dismissed with prejudice.

## II.  Background and Procedural History.

### A. Parker's Initial Complaint.

On June 9, 2015, Parker initiated this action in the United States District Court for the Eastern District of Pennsylvania by filing an application (*doc.1*) to

proceed *in forma pauperis*, which was granted on September 8, 2015.  Also on

September 8, 2015, Parker filed his initial complaint pursuant to 42 U.S.C. §1983,

which named the following defendants: (1) Sergeant Boring ("Boring");

(2) Superintendent Laurel Harry ("Harry"); (3) Deputy Superintendent James

Meintel ("Meintel"); (4) Deputy Superintendent Kathleen Zwierzyna

("Zwierzyna"); (5) Major Paul Leggore ("Leggore"); (6) Major John Horner

("Horner"); (7) the "Warden" of SCI-Camp Hill;[1] and (8) the Department of

Corrections ("the DOC").  The primary event giving rise to Parker's initial

complaint was Boring's alleged confiscation of Parker's prescription eyeglasses

while Parker was incarcerated at SCI-Camp Hill.  Parker alleged that this

confiscation constituted cruel and unusual punishment and sought monetary

damages against Boring, the DOC, and other supervisory individuals (listed above)

at SCI-Camp Hill.

On September 14, 2015, the case was transferred from the Eastern District of

Pennsylvania to this Court because the events giving rise to Parker's complaint

occurred at SCI-Camp Hill, which is located within the Middle District of

Pennsylvania.  In accordance with 29 U.S.C. § 1915A, we conducted a screening

of Parker's initial complaint and determined that the complaint failed to state a

---

[1]     There is no "Warden" of a Pennsylvania State Correctional Institution.
Rather, the head of such an institution is the Superintendent.

claim against any of the defendants, with the exception of Boring. *See doc. 13*.

Specifically, we determined that Parker's claims against the DOC, as well as his

official-capacity claims against the other defendants, were barred by Eleventh

Amendment immunity; furthermore, we determined that any individual-capacity

claims against the rest of the defendants, except for the claims against Boring,

failed to state a claim upon which relief may be granted. *See id.* at 4.  We granted

Parker leave, however, to file an amended complaint, and he did so on October 7,

2015.

### B. Parker's Amended Complaint.

Parker's amended complaint names the same defendants that were named in

his initial complaint, except that he now omits the "Warden" of SCI-Camp Hill and

adds Corrections Officer John Doe ("Doe") as a defendant.  Although his

complaint is somewhat rambling and disjointed, the relevant facts alleged are

relatively brief and can be recounted as follows.

On May 29, 2015, while Parker was incarcerated at SCI-Camp Hill, Boring

allegedly "snatched" Parker's prescription eyeglasses off of his face while the two

were in a receiving room. *Doc. 15* at 3.  Boring then told Parker that he would

have to either "ship or destroy" the glasses. *Id*.  When Parker asked why this was

the case, Boring told him that the glasses were "too expensive looking" and that

consequently, Boring feared for Parker's safety. *Id*.  Parker informed Boring that

3

he had glaucoma, but Boring allegedly responded that he did not care and that he had orders that he was required to follow. *Id*; *doc. 15-1* at 3. Parker requested a new pair of glasses and was told by Doe that if he put in a "sick call slip," he should receive a new pair within a week. *Doc. 15-1* at 3. Doe then reiterated Boring's earlier assertion that Parker would have to choose to either ship the "expensive-looking" glasses home or destroy them, and Doe then warned Parker that if he could not make up his mind, the prison staff would have to beat him up, take his glasses and destroy them, and then place him in "the hole." *Id.*

After this alleged threat, Parker reluctantly requested that Doe ship the glasses home. *Id.* Parker filled out a slip indicating the home address to which he wanted his glasses shipped, but according to Parker, the glasses never arrived at his home. *Id*. at 3-4. Furthermore, Parker complains that approximately two months passed until he was provided with a pair of replacement glasses and that during this time, his glaucoma worsened, his legal work "slacked," he suffered from migraine headaches, and he stubbed his toe. *Id*. at 4. Parker contends that on account of his diabetes and blindness, the stubbing of his toe could have "detrimental effects" in the long run, including a possible amputation of his leg or foot. *Id*. at 4, 15.

Although Parker lists a plethora of purported causes of action in his amended complaint, *see id.* at 12-14, including a multitude of state-law torts, the nature of Parker's claims is somewhat unclear. Based on our interpretation of the

4

amended complaint, the only constitutional causes of action that can reasonably be inferred from the facts of the amended complaint are (1) deliberate indifference in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, (2) excessive use of force in violation of the Eighth Amendment, and (3) due process violations of the Fourteenth Amendment. While the gravamen of the amended complaint and the factual allegations involve actions taken by Boring and Doe, Parker also raises claims against various supervisory defendants and the DOC, alleging generally that their failures to properly supervise, train, or implement proper procedures caused the actions that were taken by Boring and Doe and that they allowed Boring and Doe's actions to occur. Parker seeks declaratory and injunctive relief, as well as hundreds of millions of dollars in compensatory and punitive damages. *See id*. at 17-26.

## III. Discussion.

### A. Screening of *In Forma Pauperis* Complaints─Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by prisoners given leave to proceed *in forma pauperis* in cases that seek redress against government officials. Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

 **(a) Screening.—**The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

 **(b) Grounds for dismissal.—**On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

  **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

  **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

 "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v.*

*UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts."  *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged."  *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,*

556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

'"however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'"  *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint

must contain more than mere legal labels and conclusions.  Rather, a *pro se*

complaint must recite factual allegations that are sufficient to raise the plaintiff's

claimed right to relief beyond the level of mere speculation, set forth in a "short

and plain" statement of a cause of action.

### B. The DOC Is Entitled to Eleventh Amendment Immunity.

Parker brings his claims under 42 U.S.C. § 1983.  "Section 1983 imposes

civil liability upon any person who, acting under the color of state law, deprives

another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States."  *Shuman v. Penn Manor Sch. Dist.,* 422

F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive

8

rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Parker names the DOC as a defendant. The DOC, however, is entitled to immunity from Parker's claims under the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991)). Namely, that each state is a sovereign entity in our federal system and that it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

9

In the absence of consent, a suit in federal court against the state or one of its agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam).  A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).

The DOC is a state agency. *See* 71 P.S. § 61(a).  The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A. § 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).  Accordingly, Parker's claims against the DOC are barred by the Eleventh Amendment.

### C. Any Claims for Damages Against the Other Defendants in their Official Capacities Are Also Barred by the Eleventh Amendment.

Although somewhat unclear, it appears that Parker brings his claims against the defendants in both their official and individual capacities.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690, n. 55 (1978).  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013).

The defendants in this case are state officials. Thus, any claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. Claims against the defendants in their official capacity for prospective injunctive relief are not barred by the Eleventh Amendment. See *Ex parte Young*, 209 U.S. 123 (1908). Claims against the defendants in their individual or personal capacities are also not barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

### D. Parker's Claims for Injunctive and Declaratory Relief are Moot.

To the extent Parker seeks injunctive and declaratory relief against any of the defendants, such claims are moot because Parker is no longer is incarcerated at SCI-Camp Hill.

It is well established that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 459 n. 10 (citations omitted). "Past exposure to illegal

conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F.Supp. 1451, 1462 (S.D.N.Y. 1985) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).  Thus, a prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief because he is no longer subject to the conditions he alleges are unconstitutional.  *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Abdul–Akbar v. Watson*, 4 F.3d 195, 206–07 (3d Cir. 1993).

Parker's recent notice of address change (*doc. 20*) informs us that around January 2016, he was released from SCI-Frackville and is currently out of prison and living in Philadelphia.  Thus, since he is no longer incarcerated, he faces no potential of continuing adverse action at the hands of the individuals at SCI-Camp Hill or even the DOC as a whole.  Consequently, his claims for injunctive and declaratory relief are moot.

### E. The Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Against Defendants Harry, Meintel, Zwierzyna, Leggore, and Horner.

Parker's claims against defendants Harry, Meintel, Zwierzyna, Leggore, and Horner are based on their actions or inactions as supervisors.  Parker has failed, however, to allege facts from which it could reasonably be inferred that these defendants were personally involved in a violation of his rights.

Liability in a § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.  In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015).  And so respondeat superior cannot form the basis of liability.  *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).

Parker does not allege that any of the defendants other than Boring and Doe were directly involved in the confiscation of his eyeglasses.  Rather, he seeks to hold the other defendants liable for their conduct as supervisors of Boring and Doe. A supervisor may be liable for unconstitutional acts by his or her subordinates in two general ways: (1) the supervisor, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custody which directly caused [the] constitutional harm'"; or (2) the supervisor "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of an acquiesced' in the subordinate's unconstitutional conduct." *Barkes,* 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Parker does not allege that any of the defendants, other than Boring and Doe, participated in the confiscation of his glasses, had knowledge of and acquiesced in

13

the confiscation of the glasses, or directed Boring or Doe to confiscate the glasses. Rather, Parker seeks to hold the defendants, other than Boring and Doe, liable in their supervisory capacities based on their purported failure to train and failure to supervise Boring and Doe.  Failure-to-train and failure-to-supervise claims are claims based on a policy, practice, or custom. *Id.*  The level of intent necessary to establish such claims "will vary with the underlying constitutional tort alleged." *Id.* at 319.  Here, based on the facts alleged in the amended complaint, it appears that Parker's supervisory claims pertain to his Eighth Amendment deliberate indifference claim.

When the underlying constitutional claim is an Eighth Amendment claim that requires subjective deliberate indifference, "[t]he plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure."  *Id.* at 317 & 319-320. Generally, this test can be met in one of two ways: (1) "showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs'"; or (2) "showing that the risk of constitutionally cognizable harm was

'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support a finding that the four-part test is met." *Beers-Capitol v. Whetzel,* 256 F.3d 120, 136-137 (3d Cir. 2001).

Parker, however, has not alleged facts from which it can reasonably be inferred that the supervisory defendants violated his rights.  Parker does not allege facts from which it could reasonably be inferred that the policy or procedures actually in effect at the time Boring and Doe engaged in the actions of which Parker complains created an unreasonable risk of a constitutional violation, that the supervisory defendants were aware that those policies or procedures created an unreasonable risk, that they were indifferent to any such risk, or that his constitutional injury was caused by the failure to implement a different supervisory practice or procedure.  While Parker contends vaguely that the supervisory defendants should have "implement[ed] more realistic rules [and] procedures that will not violate someone's medical illnesses," *see doc. 15-1* at 21, he is not at all specific as to what he believed these new procedures or rules should have entailed. Accordingly, the amended complaint fails to state a claim upon which relief may be granted against the supervisory defendants.

**F.  Individual Capacity Claims Against Boring and Doe.**

As stated above, we construe the amended complaint to contain an Eighth Amendment medical claim, an Eighth Amendment excessive force claim, and a Fourteenth Amendment due process claim against defendants Boring and Doe.  We discuss each of these claims below.

**1. Fourteenth Amendment Due Process Claim.**

We construe Parker's allegations that his prescription eyeglasses were taken from him and that they never arrived at his home after he handed them over to prison officials for shipping as a Fourteenth Amendment due process claim.  For the reasons set forth below, however, such a claim lacks merit.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XI.  But negligent acts of state officials causing unintentional losses of property do not implicate the Due Process Clause.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986).  And furthermore, even if a deprivation of property is intentional, the Due Process Clause is not violated if a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Assuming that Parker had a property interest in his eyeglasses of which he was ultimately deprived, he fails to allege that such deprivation was intentional or malicious.  Parker in fact alleges that Boring's motivations for taking the glasses was to protect his [Parker's] own safety, which Boring believed would be threatened because the glasses were expensive-looking.  Both Boring and Doe informed Parker that the glasses could be shipped to Parker's home if he chose, and Parker was provided with the necessary paperwork to fill out to request shipping to his home address.  Although the glasses allegedly never made it to their intended destination, Parker does not allege that this was due to the deliberate or intentional acts of any of the defendants.  At most, the failure of the glasses to reach their proper destination was the result of prison officials' negligence, which does not give rise to a Due Process Clause claim.  *Daniels*, 474 U.S. at 328. Furthermore, even if an intentional act resulted in the permanent loss of the eyeglasses, Parker fails to allege that no other post-deprivation remedy for this loss was available.  The prison grievance program and a state-law conversion action are adequate post-deprivation remedies for the intentional deprivation of property.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) ("In sum, the plaintiff had an adequate postdeprivation remedy in the grievance program."); *Cruz v. SCI-SMR Dietary Servs.*, 566 Fed.Appx. 158, 160 (3d Cir.

2014) ("We note that a common law action for conversion . . . is an adequate post-deprivation remedy.").

## 2. Eighth Amendment Medical Claim.

Parker contends that after his prescription eyeglasses were confiscated, prison officials failed to provide him with a replacement pair of glasses for a period of two months.  Consequently, he experienced various medical difficulties including an exacerbation of his glaucoma, multiple migraine headaches, and a stubbed toe.

In order for a plaintiff to sufficiently allege a viable Eighth Amendment medical-care claim, he must allege facts from which it can reasonably be inferred that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").  Thus, "the standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.'"  *Monmouth Cnty. Corr.*

*Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).

Deliberate indifference, the first prong of the *Estelle* test, is a subjective standard. *See Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To elaborate, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment" and amounts to deliberate indifference. *Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as a constitutional claim because medical malpractice is not a constitutional violation. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifference represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted).  Furthermore, if a plaintiff's claims amount to a simple disagreement with medical officials as to the course of treatment, this does not amount to deliberate indifference.  *See Douglas v. Hill*, 1996 WL 716278, at *7 (E.D. Pa. Dec. 6, 1996) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987)).

With respect to the second prong of the *Estelle* test, a prison official's deliberate indifference constitutes an Eighth Amendment violation "only if it is directed toward a 'serious medical need.'" *Lanzaro*, 834 F.2d at 348.  Generally,

"a medical need is 'serious' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. at 347 (citation omitted). Additionally, a medical need may be considered "serious" by "reference to the effect of denying . . . treatment." *Id*. Where denial or delay of medical care results in "unnecessary and wanton infliction of pain" or "causes an inmate to suffer a life-long handicap or permanent loss," the medical condition is considered "serious." *Id.* (internal quotations omitted).

### a. "Serious Medical Need" Prong of the *Estelle* Test.

Parker's amended complaint alleges sufficient facts to show that his optometric difficulties constituted a serious medical need for purposes of the Eighth Amendment. The Third Circuit has recognized that "a 'very slight visual impairment' does not constitute a serious medical need [for Eighth Amendment purposes]." *Tormasi v. Hayman*, 452 Fed.Appx. 203, 206 (3d Cir. 2011) (quoting *Borelli v. Askey*, 582 F.Supp. 512, 513 (E.D. Pa. 1984)). An inmate's optometry needs are serious, however, if they are sufficiently severe to cause complications such as significant blurring, double vision, dizziness, or walking or falling into objects. *Tormasi*, 452 Fed.Appx. at 206; *see also Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (finding a serious medical need when plaintiff's lack of

prescription glasses caused him to experience double vision and loss of depth perception that caused him to walk or fall into objects).

Based on the facts alleged in the amended complaint, we can reasonably infer that Parker's visual impairments were more than just "slight."  Parker alleges that he had glaucoma at the time his prescription eyeglasses were taken from him and that this glaucoma worsened during the two months that he was without any eyeglasses.  Furthermore, during the two months he was without glasses, Parker experienced other difficulties from his visual deficiency, including a series of migraine headaches and a stubbed toe.  Thus, Parker has provided sufficient allegations to show that his optometric needs were serious, and he has satisfied the "serious medical need" prong of the *Estelle* test.

### b.  "Deliberate Indifference" Prong of the *Estelle* Test.

Although Parker has satisfied the "serious medical need" prong of the *Estelle* test, he fails to satisfy the "deliberate indifference" prong of the test.  There are no facts alleged to suggest that either Boring or Doe (or any other defendants named in this action) were deliberately indifferent with respect to the delay in providing Parker with replacement glasses.  When Parker first told Doe that he would need a new pair of glasses, Doe told Parker that it would be necessary to put in a "sick call slip" and that upon doing so, Parker should receive glasses within a

22

week.  This, however, is all that is alleged with respect to either Doe's or Boring's role in providing Parker with new glasses.  Parker does not allege that it was the responsibility of either Doe or Boring to ensure the provision of a new pair of glasses.  In fact, Parker complains that "it took several weeks for *medical* to give me a lower class of glasses," suggesting that Parker faults *medical* staff for the delay in providing him with replacement eyeglasses rather than any of the corrections staff.  *See doc. 15-1* at 4.  Parker, however, does not name any medical defendants in his complaint.  Thus, Parker fails to satisfy the "deliberate indifference" prong of the *Estelle* test, and the Eighth Amendment medical claim should be dismissed.  *See Brown v. Thomas*, 172 Fed.Appx. 446, 451 (3d Cir. 2006) (affirming District Court's dismissal of an Eighth Amendment medical claim when plaintiff "ma[de] no specific allegations against [one of the named defendants] regarding the delay in eye care.").

### 3.  Eighth Amendment Excessive Force Claim.

Finally, Parker's amended complaint could reasonably be construed to raise an excessive force claim with respect to the threat made by Doe.  Parker alleges that Doe threatened Parker that if he was unable to choose whether to ship his glasses or destroy them, corrections staff would beat him up, take his glasses and destroy them, and then put him in "the hole."  Parker also alleges that Boring

"snatched" Parker's prescription glasses off of his face when they were first

confiscated, but it is unclear whether Parker wishes to raise an excessive force

claim with respect to this factual allegation.  With respect to either of the

aforementioned incidents, however, Parker falls far short of stating an excessive

force claim.

The Eighth Amendment prohibits cruel and unusual punishment, and

whenever prison officials are accused of using excessive force in violation of the

Eighth Amendment the inquiry "is whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The following factors are relevant in

determining if the force use violated the Eighth Amendment: the extent of the

injury suffered; the need for the application of the force; the relationship between

that need and the amount of force used; the threat reasonably perceived by the

official; and any efforts made to temper the severity of a forceful response. *Id.*  The

reasonableness of a particular use of force is often dependent upon factual context

and must be "judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight."  *Graham v. Connor,* 490 U.S. 386,

396–97 (1989).

Not "every malevolent touch by a prison guard" violates the Constitution.

*Hudson,* 503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and

unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley,* 475 U.S. at 327). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly been thought necessary. *Id.* at 37. "The extent of injury may also provide some indication of the amount of force applied." *Id.* But to establish an excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury. *Id.* Rather, the central issue is the force used by the officer, not the injury caused by the officer. *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

In this case, any potential excessive-force claim against Boring fails because there is no suggestion that Boring engaged in any sort of conduct that was anything more than *de minimis*. "Snatching" the glasses off of someone's face can be appropriately analogized to a mere "push or shove" that causes no discernible injury, especially in light of the fact that Parker alleges no injury as a result of the "snatching." Furthermore, Parker alleges no facts from which it can be gathered that the snatching of his glasses was repugnant to the conscience of mankind.

25

Furthermore, any excessive-force claim against Doe would fail to state a claim as well because all that is alleged is that Doe made a verbal threat against Parker.  This Court has recognized, however, that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."  *Simmons v. Mallick*, 2010 WL 2079865, at *7 (M.D. Pa. Apr. 21, 2010).  Thus, "a constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual clause . . . or under the Fifth Amendment's substantive due process clause."  *Id.* (internal citations omitted).

### G.  Leave to Amend.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provision of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  Given that Parker was already granted leave to amend once before and given that Parker's amended complaint failed to correct the deficiencies present in his initial complaint, we believe that granting Parker leave to amend again would be futile.

## IV.  Recommendation.

Accordingly, for the foregoing reasons, **WE RECOMMEND** that Parker's amended complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **19th** day of **May 2016**.


                                        ***S/ Susan E. Schwab***
                                        Susan E. Schwab
                                        United States Magistrate Judge